and Fenwall, 2009-1557. The last case dealt with ringtones. I hope we don't see any blood in this argument. Mr. Castanhas. Thank you, Judge Lurie, and may it please the court. Our brief sets forth a number, five in particular reasons why the judgment of this case should be reversed or otherwise vacated. Well, I'm certainly prepared to address all of those. In the limited amount of time that I have this morning, I'd like to address these three. First, obviousness. Claim 16 is obvious. Without changing the sequence of your argument, can we start off with indefiniteness? We certainly can, Your Honor. The biggest problem with this case is that it is impossible to tell from the patent why or how to measure the critical height and radius limitations and the last limitation of the claim that is claimed to be the distinction over prior art. And in that regard, Judge Gallarza, I think this case is pretty close on all fours with the Honeywell decision, which is cited in the Bancorp decision in my Friends of the Other Sides brief. Is it accepted that there is no indefiniteness in light of the district court's construction, but should we disagree with the construction and there's an indefiniteness problem? No, it's indefinite regardless. Even if we're wrong on the construction error that we claim with regard to whether or not the tubing is included with regard to the centripetal unit, there's still an indefiniteness problem. Well, the district court basically replaced centripetal unit with centripetal component, which I'm looking at that picture and it's the round part. Why is it so difficult to measure a radius of a round part? It doesn't seem tough to me. Right. Well, Judge Moore, actually, let me direct you to page 8-1241 of the appendix. This is 1-2-4-1. I'll go along with you on this one. This is our expert, Dr. Felder, talking or giving an expert report, I believe, here. What's that page again? 1-2-4-1. This is the second expert report of Dr. Robin Felder. Now, this expert report, Judge Moore, comes after claim construction, so we've now had our argument about the meaning of centripetal unit rejected. The judge has read centripetal unit as centripetal component, so that's wiped away. What he's showing here is that there are at least four different ways to measure height and radius. I'll walk through these with you and tell you exactly what the numbers are. The first one is the height of the separation chamber. That's the internal portion. That's the part that does the work. That's the part that the brown equations that are in the prior art are all directed at, are the physics of centrifugation. That is 132.7. It's outside the range. It's only a literal infringement case. There's no equivalence here. The second one here is the height of the outer portion, which is the portion that the jury implicitly found, the outside of the component. The radius at the top, but not including the lip. You'll see at the bottom of page 16, by the way, of our brief, a picture of the cup. The lip is not included in the cup? Not in the R-top. When you use the R-top, that's not including the lip. And because there is a slight narrowing from the top under the lip to the bottom, the third one, using the outer height and the radius at the bottom, is 127.3%, still outside the range of the claim. The only way you get within 75 to 125 is by measuring the outer height and the radius of the edge. It's the lip that clicks into the machine. Again, you can see that in the photograph that's at the bottom of page 16. Isn't the definition of centrifugal unit also indefinite? Well, I think that is a serious problem with that. Does it include the tubing or not? Well, we think that it's clear, because claim 16, at least, and I should go now to the claim construction argument. When you look at the specification, there are three principal preferred embodiments set forth, starting at the bottom of column 2. I think it's around line 50. That's what's labeled a first embodiment. And that corresponds almost perfectly to claims 1 through 15. Now, that's the entire centrifugal device. That's the centrifuge as well. It's not just the chamber that does the separation. That's the entire device. Then when you get to claims 16 through 19, and the claim 16 that's at stake in this case, you have what's referred to as another embodiment, starting at column 3, line 20. And that part of the specification is critical, Judge Lurie, because that uses the terms that are in the claim preamble, which is limited. That uses those terms in exactly the same way. And that's exactly why it was error for the district judge to read centrifugal unit as it was used. In fact, I should say the centrifugal unit, which means referring to something that happened prior in the claim. The centrifugal unit, it was error to read that as centrifugal component, meaning just the separation chamber itself without the tubing. So do we need to find an improper claim construction for centrifugal unit until we find indefiniteness? No, you do not. You do not link together. Our indefiniteness argument, if you look at these four ways of measuring it, this assumes we're wrong on claim construction. This assumes we're wrong on centrifugal unit, but the judge got it right. If you add in the centrifugal component versus centrifugal unit, which one do you measure? Then you're adding at least another three different kinds of measurements, because each of those H outers, you have another set where you can use each of those radiuses, or radii, and multiply them or divide. We're back into math. We started with 2 plus 2 is 4. But you could have H sub, instead of H sub outer, you'd have H sub tubing, H sub outer plus tubing over our top, H sub outer plus tubing over our bottom, H sub outer plus tubing over our edge. So you'd have at least seven by my count, and the patent doesn't tell us this. I'm just a little confused here. I really thought that your argument was the centrifugal unit is defined in the preamble, so when it's referenced later in Claim 16 and the measurements are set up there, end of story. It's got to be those measurements have to apply to the entire unit, which is the tubes. That's our claim construction argument. And I thought I understood your argument to be the district court committed an illegal error in wrongly construing the claims, and in fact, quote, correcting the claims. Correct, yes. And yet you didn't talk at all about Novo Industries and Ultimax in your briefs, which surprised me because they seem so directly on point. And in preparing for the argument, Judge Moore, it did come to my attention because it's cited in the Shep America case. And this is exactly not a case for obvious error for exactly the reasons I was talking about with regard to the specification. When the specification describes the second embodiment, it's using these claim terms consistently with what they are used in Claim 16. So that the centrifugal device, I'm sorry, the centrifugal device is the term that's used in Claim 1 and Claim 20. No, this is unit and component. Right, but the device is out of there because device is used in those claims as the entire unit, including the centrifuge itself and all the mechanics. But when the patentee talks about the separation chamber itself, it's using different terminology and it uses it both in the claim and in the specification. And Novo says that the construction to correct an obvious error, the construction cannot be subject to reasonable debate. Well, I think we're having at least, from our perspective, we think we're right. But at the very least we're having a reasonable debate with regard to whether or not centrifugal unit includes or does not include the tubing. We certainly have textual evidence both in the claim itself and in the specification that that's the case. And we have some portions of the specification, but not all portions of the specification, that talk about how making the assembly that goes into a larger machine compact is what's really crucial here. And why you would just arbitrarily say, well, that applies to the cup, but not to the tubing, if that's indeed the correct construction, makes no sense. Because if the tubing is enormous, you haven't gotten any of the supposed benefits of smallness, which come from the invention. You would suggest to me this is a material error, like in Ultimax and Novo, and not a typographical. This is not a typographical error. If you look at the way this patent was written, when the patentee was talking about the separation component itself and drawing claims to that component, they used terminology that the unit was the component plus the tubing. It's clear the judge should not have used terms like synecdoche and analogizing this to calling a car, well, I'm going to go take my wheels down to the shop. This is not using the term centrifugal unit to really mean centrifugal component. Words have meaning, and they can't be twisted in the way that they were twisted to find us infringing. Now, that sounds like indefiniteness, Judge Gallarza. It certainly does. But that's not that argument. That argument is, read the claims as they're written. We went on non-infringement. But beyond that, it's still indefinite. So there's no way that the judge could correct the term in the claim by his interpretation of the claim construction? Of course, it presumes that we know what the correct answer is. They say, of course, they say it was an unfortunate error and that sort of thing. But they couldn't have gone into the patent office under Section 255 and gotten a certificate of correction here, not on this standard. The court certainly shouldn't be doing this under the guise of Markman construction. Well, they would have to do it basically within the proper time period if they went to the patent office. Right. And they wouldn't be able to then sue us for all of these patent damages. But the real question is, can a lower court, can a district court interpret a claim term in order to preserve the claim itself and not run afoul of the indefiniteness? I think that this court has been extremely skeptical of some sort of notion that you construe claims to preserve their validity. I don't think that's what a court ought to be doing because the problem is then you run into the problem of public notice. How are we to know? How are we to know a reasonable competitor trying to avoid the patent? And then all of a sudden, we've read the language. It's crystal clear from the specification that in these claims, unit means centrifugal unit plus tubing. It's absolutely clear, and it holds together, and it's internally consistent. And we're trying to either design around or maybe we want to license those claims, and we don't know. And then all of a sudden, we're sort of blindsided in litigation by this construction that purports to correct an error. But if the written description is clear in its face that it was an error, how do we balance that? Well, of course, putting aside that that's not this case. How do we balance that? I think Nobo answers that question because if the written description is absolutely clear that this was just an error and it wasn't a case where they were using different terminology to describe the limited internal component embodiment, then and only then do you get to say to a court, this is a case of obvious error, and you should correct it. This is, as we said in our brief, this is a case like Chef America. In fact, Chef America, I think, is a harder case than this one because if that patent, the one for the pizza dough or whatever kind of dough that was being baked, no one who cooks thinks that you heat dough to an internal temperature of 450 degrees. Anybody who cooks would look at that and think, oh, well, that's the oven temperature. Yeah, that's not what the court recommends. Does it have to be clearly obvious at that point? I think that's what Nobo effectively says because the term is not subject to reasonable debate. I think that's another way of saying the same thing. I'm eating Judge Lurie into my rebuttal time with regard to obviousness where I intended to start. How does it taste? Which the- You'll find out later. Do you want to say the rest of it? Let me just take 10 seconds, if I may, with the court's indulgence on obviousness. We've cited cases from the Supreme Court, Powers-Kennedy, from the CCPA, whose precedents are still binding on this court. Appelberg and Wolf would say that simply making something smaller that's mechanical skill, good for you. Go out and commercialize it, but it's not invention. That's an obvious advancement, if any, over the prior. Yes, Judge Moore. Before you sit down, if we were to agree with you that the court incorrectly corrected the claim and we read it literally, are you then suggesting to us we should decide indefiniteness as a matter of law and reverse, or would we need to vacate and remand to the lower court to consider indefiniteness in the first instance? I think you certainly have the power to do either, but I think on the facts of this case, given that if you interpret the claim in the way that we've suggested, Judge Moore, then what you've done is you've expanded the possible ways that you measure height, or actually you've narrowed it because you've just substituted the outside height, but you still don't know whether it's internal or external. Well, I think I'm answering my own question. Think about it and tell me a rebuttal. I will, in fact, do that, and I do think the court has enough in front of it to be equipped to make the indefinite decision as a matter of indefiniteness decision, which is legal as a matter of law. Thank you. Mr. Kostenius, since we've asked a lot of questions, we'll give you four minutes back. Thank you, Your Honor. That'll be for rebuttal. Mr. Parker. Thank you, Your Honor. No doubt you know what you'll need to talk about, having heard the argument. I do, Your Honor, and good morning. It might also be useful to talk about the damages issue. Yes, Your Honor. I'll do that. That'll provide a basis for Mr. Kostenius to respond, if he wishes to. Yes, Your Honor. Thank you. Your Honor, with respect to indefinite decision, counsel used the word, it was just impossible, not possible. Your Honor, during the whole trial proceeding before the jury, every one of Fenwell's witnesses testified they took a non-infringement position. In other words, they were able to construe the limitation, the height and radius, the height and ratio, the height, radius, ratio limitation. They were to construe it in such a way to take a position that they did not infringe. That was the basis of their indefiniteness proof during trial, for the most part. Now, counsel mentioned… Well, we're sensitive to changes of position, but tell us what the patent really says. Your Honor, the patent basically says it refers to a centrifugal unit comprising a centrifugal component in a plurality of tubes, Your Honor. Both sides, Fenwell and Hemenetics, agreed that at least for a centrifugal unit and for a centrifugal component, they both refer to, in essence, the vessel. So what we have here is a claim, in a sense, that says a vessel comprising a vessel in a plurality of tubes. I have not heard them agree to that at all. They say the unit is defined clearly in Claim 16 as the component plus the tubes. The unit is defined differently than component. It is the component plus the tubes. In their joint submission during the Markman, when they jointly submitted agreed-upon claim terms, Your Honor, they did submit with respect to centrifugal unit and centrifugal component, they both agreed a component of the device, the vessel in which centrifugation occurs, that is A202. But yes, what they are doing, Your Honor, they're taking the position that because the two terms immediately follow comprising, that that itself creates a defined term for centrifugal unit. And, Your Honor, we would, it is our position, there's two things to address, Your Honor. First, there's nothing to say, let's assume they are. But, counsel, you, on page A202, let's be very clear. Yes. They say centrifugal unit as it is used in Claims 1 through 15 and centrifugal component as it appears in Claim 16 share the same meaning. They do not agree that centrifugal unit in Claim 16 shares that same meaning. And they have consistently argued throughout, I think, it seems to me, that centrifugal unit is itself defined by Claim 16. Your Honor, maybe if I, let me just, maybe, let me just explain a little bit further. What they're saying is that the word centrifugal component means vessel, just by itself. But vessel, and then what we have also is we have centrifugal unit comprising a centrifugal component in a plurality of tubes. They're maintaining that the whole centrifugal unit, that term, as in the preamble, means both components together, combined, both the vessel and the tubes. Yes. Okay. If I misspoke, I apologize, Your Honor. I understand them to say the centrifugal unit is both the component and the tubes. Correct. And that that is what has to meet with the radius and height limitations later appearing in the claim. That's correct. That is Fenwell's position. That is correct, Your Honor. And the lower court rejected that construction. That is correct. And changed what must comply with the radius and height limitations to only the component. To the vessel alone. Yes, Your Honor. Yes, now how is that a proper thing to do since the claim clearly says the opposite of that? Well, two respects, Your Honor. First, we do have Claim 1 and 20. And what the court did was look at the entire intrinsic evidence, which included the language of the claims by themselves in connection with the rest of the claims and the specification. Claims 1 and 20 have the identical limitation, the identical limitation. And that has been construed by both sides to mean the vessel alone when referring to the height and radius limitation. But, counsel, you used different language in Claim 16. You defined what the unit was, and the unit comprised the component and the tubes. So why shouldn't the component plus the tubes, since that is the exact language you used, have to comply with the radius and the height limitation? Also, Your Honor, too, there's nothing about the claim that should suggest that the vessel, what I'm referring to as the centrifugal component, the vessel and the plurality of tubes cannot be further defined independent of the other limitation. For example, plurality of tubes is further defined as well in the body of the claim in terms of the housing, in terms of the communication. That's interesting, but it doesn't have anything to do with my question. Okay, I'm sorry, Your Honor. So try and go back. Your claim says centrifugal unit involves at a minimum these two components included. Yes. And then you go on to say that unit has to have this radius and this height, all in the same claim, right there, one claim combined. Right. On what basis can the district court ignore the clear language of that claim and correct it to save your claim from indebtedness? When viewed in the context of the specification, in view in which the height and radius ratio is referred to in every context in the specification. And what if the embodiment in the specification tracks this language exactly? There's three embodiments. Two of them go the way you're referring, and one of them goes this way. Right. And, Your Honor, in this particular case- Is this an error in claim drafting? No, it's not, Your Honor. I would submit that it is not an error in claim drafting. I think, Your Honor, the way in which the claim is drafted, one of ordinary skill in the art, looking at the specification, would see that the height and radius ratio would be referring to the vessel alone, Your Honor. I would also submit, too, that with respect to centrifugal unit and context, it would seem as though the terms were being used interchangeably in the sense that the intent, well, the structure of the claim is really talking about this one unit having specific dimensions, not that it would have also the tube itself. Because when you also look at the tube itself, the tube, it's really tough to- it's no way to even have a definitive depth because it's a variable. Is the court free to use the specification to completely reject clear claim language? No, not at all, Your Honor. I believe the court was using the specification to interpret the claim as one of ordinary skill in the art. What needs to be interpreted? The claim language itself defines what a centrifugal unit is. Your Honor, but it also defines what plurality of tubes is. The point that I'm trying to make here, Your Honor, is that it's not to say that neither one of these components can be further defined in the claim independent of one another. It's doing so with respect to the plurality of tubes, and it could do so also with the best of dislike claims in 120. It's giving further limitations on the plurality of tubes, but it can't take away one of the limitations on centrifugal units. It says it's a definition. A centrifugal unit comprises a centrifugal component and a plurality of tubes. A centrifugal unit has to have a radius between 25 millimeters and a height of 75 to 125. I just don't understand how you can ignore that clear language. I'll let you continue. Maybe you should go ahead, because if you want to respond anymore, feel free. Mr. Parker, is it your view that the specification discloses two embodiments, one of which is represented by Claim 1 and the other Claim 16? Your Honor, Claim 1 discloses the device, along, I believe, with the drive units, the first and second drive unit. Claim 1 discloses a unit being separate from the tubes. Is that the first embodiment? That is an embodiment, yes, Your Honor. And is the another embodiment, Claim 16, where it includes the tubes? Your Honor, I would submit that it is not, Your Honor. I think what's being, when read in the specification here... Why don't we just throw this patent out, if it's so difficult to construe? Because if your answer had been yes, then that means the radius and height, the same numbers apply to two different objects. But that's not, Your Honor, that is not the specification. And when you look at every instance in which these numbers are used for the height and radius ratio, they're always referred to in the context of the vessel itself. I mean, that is the gist of the invention. You mean the context of... When I say the vessel, Your Honor... No, Your Honor, the context within the actual centrifugal unit, the vessel, the component, the cup, the bowl. Well, see, that's another problem, too. Is it internal or external dimensions? They are external dimensions, Your Honor. And during the trial... And where does that say external dimensions? It comes from two respects, Your Honor. First, during trial, hemanetics expert Dr. Russell testified that one of ordinary skill in the art was designing rotating equipment would always express the structural design of the device in terms of external dimensions. And he also made reference, Your Honor, to the specification at the bottom of column 6 carrying over to column 7 where they speak of sizing of the centrifugation cup or bowl, and it speaks of reducing the overall dimensions, weight, price, volume, and it goes on. And with respect to Dr. Russell and his testimony at trial, that would speak to the external dimensions because when you're building the actual device itself, it is the forces of the device, I mean of the vessel, the weight, the top, and the length that has the impact on the umbilicus. So that's where the ratio comes in that allows you to build that compact device. So that's where it would come from, Your Honor. Excuse me. Go ahead. What about the argument that smaller isn't necessarily patentable? Your Honor, this is not even close to any of that situation. I mean, this is not a case about reducing anything in the prior art to size. Fenwell has failed to even identify a prior art device that is an integrated system that's capable of continuous blood flow collection with the umbilicus. In other words, there's nothing out there of a larger size that was to be reduced to the extent that they were saying that the 163 patent, which allegedly covers their umbilicus device, that's an entirely different system. And during the trial itself, Dr. Russell explained, and he used his words, he said this was a different animal. This is not an integrated system. It takes the flexible bag and it wraps it around the rotor. So it wasn't even a device that even was one that if you were actually to reduce, you would not get to the claimed invention. You want to talk about the injunction? Yes, Your Honor, I would do that. Past versus future. Yes, yes. Your Honor, during closing, counsel argued for an amount of $33 million in damages. Now that $33 million in damages did include $22 million in lost profits and $12 million in future damages. They did put on... Why can you get future damages? Why? Why? Your Honor, in this case, it wasn't requested. So to the extent there was no injunction that was provided, perhaps they could have sought and requested specifically within the jury instructions themselves future damages. But why should, I mean, can't the defendant always just design around and stop making it? Why should there be the possibility of future damages? Isn't that what the injunction or a compulsory license would come into play for? But why is the jury in the business of giving future damages anyway? Well, Your Honor, I would say that they're not. But I just want to, in this sense, since we're dealing with a very unique device, we're dealing with blood donations, blood drives, and things of that nature. So there was a possibility that the scope of the injunction could have been that Fenwell would not be able to install new devices for the purposes of using the infringing components and that they would be phased out. So the scope of the injunction at the time was not known. So at that point, that was the reason why some evidence for a four-year period post-verdict of future damages was presented. And it was the nature of the business of donating blood that really was the impetus for that. But how could we calculate future damages without knowing exactly what the units that would be used? Okay. But, Your Honor, there was... Now, it's our position that no future damages were awarded. Now, the future damages that was discussed during the trial was simply just based upon the longevity of Fenwell's devices and given the amount of volume that would be used to replace it with the kits, the infringing kits. But wasn't future damages actually discussed at closing argument before the jury? It was raised, Your Honor, specifically in the context of counsel requesting $33 million. Didn't use the word... Thirty-five, I thought. Twenty-two and thirteen. You're right. $35 million. That's right. $35 million. And that number was actually, if you broke it out in light of the testimony during trial, yes, it included an amount I believe of $12 million in future damages. Was there any objection to an expert offering testimony that there ought to be future damages? On Fenwell's side, there was no objection then that I recall, but also there was no objection after the jury was instructed, after the jury was charged. The court had a sidebar, asked both parties, is there anything you'd like me to do? Is there anything you'd like to change? There was discussion about other aspects of the case, but that was not an area that was discussed. But you would agree, I assume, that if future damages were awarded, suppose there was a special verdict form of the line that says, an amount for future damages, and it said $13 million, tracking your damages expert's exact number, then an injunction would be improper under those circumstances. Your Honor, not necessarily so, Your Honor, because the irreparable harm, the evidence of irreparable harm that was put forth before the court, that this is basically a two-party market with respect to compact, portable, continuous flood flow collection systems. Whatever sales spend wall makes is basically taking away from the next. You can't have it both ways. You can't get future damages for a time period and then say, and you also don't get to sell during that time period. Well, Your Honor, there would be, to the extent it would be true double dipping, yes. There would be no. So you would like the damages verdict to be revised or the injunction vacated? Your Honor, the injunction to stay in place, Your Honor. The damages verdict, they have not shown, and there's nothing that we can see that you can look at the overall number of $11 million in lost profits, $4 million in reasonable royalty, and let me just, Your Honor, if I could just make this quick point. Go ahead and finish. That is half the lost profits that Hammonetics even asked for. And what we've determined was the $4 million in reasonable royalty was what we believe is the jury took a look at their lost sales, Hammonetics lost sales, and instead of putting a 15% reasonable royalty, which is what Hammonetics asked for, it was a 7.5%. So that's where we are coming up and just roughing the numbers. But there's nothing in there to back out and say, well, what went to the future? Because the jury instructions, they just didn't ask the court when they were deliberating. They were deliberating. They were led to consider only past harm, past damages. Well, it certainly was a document that said past and future damages. Your Honor, was that with the jury verdict form or the jury instructions? No. I thought it was in evidence. Total profits, Hammonetics has lost and will lose lost profits. Future lost profits, 13. Total, 35. That's right. Your Honor, that was presented at least during the trial. But it wasn't requested with respect to the jury instructions. The jury was not charged with assessing future damages, just past damages. Anything further? I believe I just have a couple of minutes. Yeah, I gave Mr. Castanis a little extra time, so you can take a couple of minutes. OK. Your Honor, again, with respect to obviousness, there's really just three pieces of prior art that they were relying upon. It's the 163 patent. It's also the Brown Equations. And Your Honor, I'd like to just discuss a little bit about the Brown Equations. And also, there was a prior art device that Hammonetics was already out there selling. They make much in their paper about the Brown Equations as somehow one of ordinary skill in the art would look to those equations, and it would lead to the claimed invention. And that's just simply not the case, as it was testified during trial by Dr. Russell. Dr. Russell explained that the Brown Equations do deal with, and they discuss the influences when you're separating, just looking at the separation chamber by itself, the influences of speed and of area with respect to separating the blood components and getting a proper separation. But the Brown Equations do not get you to the outer dimensions. It's basically, it's not about how to build a better separation device. And with respect to the claimed invention, yes, the invention has its outer dimensions, but the Brown Equations will not get you to a functional device. They're simply just a component. And in fact, Brown testified himself that it was merely a starting point in getting toward the claimed invention without any other explanation beyond that. No one from Fenwell's side testified that these equations alone will get you down the path to the claimed invention. And Your Honor, with respect to, there isn't one other item as well, Your Honor, I would like to bring this to the court's attention. On page... On the obviousness section, they quote, Your Honor, testimony by Mr. Rochon. And the testimony, Your Honor, is not complete. And I just wanted to bring that to the court's attention. In fact, the testimony, they were reading his deposition testimony into the record. And it turns out that... Here we go. And that it turns out, Your Honor, this is page 29 of Fenwell's brief. But if you look at the trial testimony, A3156, the court asked Fenwell's counsel to finish, to read the complete deposition testimony. And Mr. Rochon did testify that the formula was not new, and the formula was not known in the prior art. That is his height and radius ratio. Thank you, Mr. Parker. Mr. Castaneous will have four minutes to strictly conclude. I hope not to take it all, Your Honor. I'll try to limit myself to one point on each of the arguments that's been addressed here. With respect to claim construction, if they meant in Claim 16 to define the centrifugal unit to be separate from the tubing, they knew how to do that. They did it in Claim 1. They didn't do it in Claim 16. So what about my question I asked you before? What do we do if we were to agree with you? If you agree with us on claim construction, then I think under Cardinal, you still have to reach invalidity grounds. I think the court has enough here to see that the claim is still indefinite. Judge Lurie, I think you simply ought to just throw the patent out. I couldn't agree more. But even under that construction, it's got indefiniteness problems because you still don't know. Under Cardinal, we don't have to reach the claim. I mean, if they've got the claim construction wrong, we could say, no, we should give the district court the first shot at delimiting. And you could send it back. And the other possibility is also to rule in our favor on obviousness that will invalidate the patent. That's not what I'm asking. I guess what I'm trying to get at is what do I do if I agree with the claim construction being wrong and I hold it to the literal language? So can I reach indefiniteness as a matter of law or is there anything that really needs to be developed on that? I don't think there's anything that needs to be developed because this court has made clear that indefiniteness is a question of law. It's really the result of the claim construction process. And even if you agree with us with regard to what the centrifugal unit comprises, then there are still problems with how do you measure, for example, the radius? Do you measure the radius internally or externally? The patent doesn't tell us this. Well, if you include the tubing and everything, I certainly have a difficult time figuring out how to measure the radius. But was there expert testimony on that point? Or did the district court, were there never any expert testimony because of the district court's contrary claim construction? Well, there certainly wouldn't have been any expert testimony on our construction because that was decided pretrial. So if that's helpful to your honor to answer the question of what you do with the indefiniteness argument, I believe that the court can reach it. But the court may also determine that it wants to remand the issue. With regard to indefiniteness, Judge Lurie, you asked my friend on the other side where does it say external dimensions. He pointed you to one portion of the spec that says it talks about reducing the overall dimension. But I can point you to another portion of the spec, almost in the same paragraph, where it talks about reducing or increasing the height of the centrifuge enclosure, clearly referring to internal dimensions. This is why, Judge Galliaras, I feel this case is like Honeywell. Honeywell, the patent didn't say anything about how to measure. This patent tells you contradictory things about how to measure. Thirdly, with regard to obviousness, my friend said that two of the things. Excuse me, wouldn't a person of ordinary skill in the art know the difference at that point just by the disclosure that's made? I think a person of ordinary skill who sees that there's one reference to external and one reference to internal, I don't know how. Which is which in determining the radius itself? I don't know how a person of ordinary skill can resolve two contradictory statements there. I just don't. That's the problem. That's one of the many problems with this patent. And in particular, in light of the way that it's been read to be used against us. Very quickly, because I want to be strict with regard to the extra time that you've given me. The integrated system and flexible bag that my friend said defeat the obviousness claim, I don't see where that is in Claim 16. Claim 16 doesn't say anything about an integrated system. It doesn't say anything about a flexible bag. We showed in our reply brief that their argument that rigidity is some sort of distinction is irrelevant, because it's not in the claim. Finally, with regard to damages, Judge Gallarza, you were asking my friend on the other side about whether or not he asked for future damages. I think it came down to the yes, they did ask for it. And I think that under this court's decision in a genetics, Judge Moore, and as informed by the later Fresenius case, Judge Gallarza, it's pretty clear that asking for it, putting forth evidence on it, is enough to show that there's no irreparable harm, no claim for future damages. And here we are paying an additional royalty. Did you object to the introduction of evidence? I don't know if you were at trial. I was not at trial. Whoever was at trial, did they object to the introduction of evidence of future damages? I don't think there was an objection on that score. I think we were meeting the evidence with regard to you can't tell, it's too speculative. But I don't think there was an evidentiary objection. But I'm sorry. I can't remember, chapter and verse, whether that's an accurate answer or not. I'm telling you to the best of my recollection. I've overstated my welcome. Thank you, Your Honor. Thank you, Mr. Stanley. This case will be taken under advisement. All rise.